The next case for argument is Sidibe v. Sutter Health. And just to be clear, my understanding is that Sidibe will have 20 minutes, the State of California will have 5 minutes, and Sutter Health will have 25 minutes. That's my understanding, Your Honor. May it please the Court, my name is Matt Cantor. I'm from the law firm of Constantine Cannon. We're here today on behalf of the appellants and the members of the certified class. I'd like to reserve 4 minutes for rebuttal, please. I'm going to focus my argument today on the wrongful evidentiary exclusion orders. If time permits, I'll also address the instructional errors as well. The jury's analysis of the California Cartwright Act claims asserted here was necessarily incomplete. The district court prevented the jury from considering any of the vast amounts of critical evidence relating to the design and initial implementation of Sutter's restraints. The Court excluded all evidence prior to January 1, 2006, despite the fact that each of the restraints at issue was imposed by Sutter for the first time well before then. Indeed, the Court recognized 2 months after its initial pre-2006 order that the evidentiary cutoff date was, in its words, arbitrary. And that precluded the jury from considering substantial evidence, evidence of Sutter's admissions, one, of its ability to force health plans into all-or-nothing system-wide arrangements, two, of its anti-competitive rationale for doing so, and three, of the likely anti-competitive consequences of its behavior. And that evidence included economic evidence, economic evidence that substantiated the class's market definition contentions, that the market here was for hospital services sold to health plans, and that Kaiser Permanente did not participate in that market. And... Counsel, can I ask, what years were the contracts that are at issue for, you know, the damage period started in 2011, correct? Correct. So what years were the contracts that formed those damages signed, or were they valid? The contracts that related to the damages period started in 2007. However, Your Honor, that's not where the analysis ends. Here, even prelimitations evidence, and that's the case of our legion on that, is admissible, particularly under Corwin. Corwin is a Supreme Court of California case that says that evidence from before and after the restraints are imposed, including evidence of the market conditions before and after the restraints, evidence of the purpose of the restraints, and evidence of the history of the restraints, of course, is admissible. Here, the restraints began, indisputably, in 2001, where Sutter moved from individual hospital contracting to system-wide hospital contracting in order to gain additional leverage. I'd also like to say the whole purpose of before and after analysis is you look at a market that is not affected by any restraints, a competitive market, and you compare that to a restraint market. So you, by definition, have to look at prelimitations evidence, and the Court didn't seem to understand that. At 1 ER 43. So, can I ask, I mean, the jury found for Sutter on element ones of both the claims. And so, regardless if there was evidentiary hearing, how was it harmful to you, you know? So, on the tying claim is whether or not Sutter forced tied hospitals. And so, all this history, I don't see how that's relevant to that question. Okay. So, there's six reasons why. Okay. There's harm — there cannot be harmless error. And, of course, Sutter has the burden of proving harmless error. If we show error, then there's a presumption of prejudice. First of all, the order excluding — the orders excluding evidence relating to design and implementation of restraints excluded evidence that was clearly material under the United States Supreme Court's decision in Continental Org. Moreover, again, the evidence that was excluded wholly went to the principles set forth in Corwin. It was material evidence. I'm just asking for, just as a factual matter, what did the evidence that was excluded, how would that have proven that, you know, Sutter did not tie or did tie hospitals? Just focusing on the tie, you want me to? Yeah. For now, I just wanted to see that. First of all, focusing on the tie, we would have shown that but for the — but for the exclusion orders, that before system-wide contracting, each of the five health plans separately contracted for Sutter individual hospitals. We weren't able to show that. But that thereafter — How does that disprove whether or not Sutter tied in a current contract? It — it provides context, because it shows that, indeed, there were separate demand for the individual hospitals. So we would have proved that there was separate demand for these hospitals through the individual contracts, and then would have shown that but for that separate demand, the health plans were required to enter into system-wide contracts, the terms of which linked the tied hospital services to the terms of sale for the — for the tying hospital services. But the jury found that there was no tying. But the jury — that's — the jury didn't see that evidence. If the jury would have seen — So the evidence prior to 2006 would have shown that the Sutter individually negotiated with the insurance plan. That's exactly right. It would have — And the only difference is that evidence showed that now they do it statewide. Well, no, there's a major — there's two differences, first of all. First of all, the evidence would have shown that each of the five health plans separately contracted for those individual hospitals. That was precluded from the jury's review. Secondly, the evidence would have shown that these system-wide contracts, unlike those individual contracts contained anti-steering and non-par rate penalty clauses, we would have juxtaposed the individual contracts with those system-wide contracts to demonstrate that only through tying was the offensive terms implemented. So the — can I take — the takeaway is the pre-2006 evidence would have shown that Sutter previously negotiated on individual contracts and then switched to a statewide system. Is that the gist of the — And that it gained additional market power by doing so, and through that additional market power was able to impose these offensive clauses. Moreover, we would have shown that once Sutter moved to system-wide contracts, was the epicenter, was the mechanism through which it was able to carry out its forcing, that Sutter's prices went up precipitously in 2001, 2002. Indeed, they became higher than competitive levels and stayed higher for 20 years. You would agree — you know, now checking out of the realm of harmless is just whether or not the 403 analysis is correct — you would agree that the changing from individual contracts to statewide negotiations doesn't have really strong relevance to the question of whether or not Sutter was tying hospitals in 2007? I absolutely disagree with that, Your Honor. In order to know whether or not there's tying, you first have to understand whether there's separate demand for the products. That comes straight out of U.S. versus Microsoft. That is a key thing. Here, we move for summary judgment on the issue that there was separate demand for the individual hospitals. So there's no other evidence that was presented that hospitals — I thought that was presented, that there was confusion — or that there was demand for that. The evidence — there was no evidence that we were able to show that there were individual contracts for each of the five helpers. The Sutter witness that you challenged that statement, because she testified that there was no — none of this demand, and you challenged that on — No, I don't recall that, Your Honor. I don't know what you're referencing. I do know that Sutter's chief contracting officer said in an affidavit that, indeed, in the 1990s, Sutter contracted on an individual basis, and that was excluded by the district court. She said, we cannot ask about individual contracting. And I would say to the court, why not? Why weren't we able to ask about that? It's certainly not irrelevant, and it's certainly material. You also said — I'm sorry. So the district court didn't allow any evidence that Sutter previously negotiated hospitals individually. There was one witness, a Blue Shield witness, who sort of blurted out a comment. We were told we can't elicit this evidence and said there were individual contracts at one point. But we weren't able to show that for the four other health plans — Anthem, Aetna, United, and Health Net. This was substantial. We also weren't able to juxtapose the contracts of the individual hospitals with the system-wide contracts. Now, going back to the exclusions here — Oh, sorry. Just — is the same argument on your unreasonable course of conduct claim, where the jury found — didn't find on the first element on that one as well, that the movement from individual to statewide is the relevant information that the jury should have heard for that point? No, there's a lot of evidence that the jury should have heard besides that, Your Honor. For example, on Question 5, the Question 5 is — that doesn't have anything to do with a tie. There's no tie we have to prove there. It says, did Sutter force the health plans into contracts, right, that prevented steering? And it's steering by effective, narrow- and tiered-network products. The Court excluded admissions by Sutter that it indeed forced. Admissions from 2006, from the soon-to-be CEO of Sutter, who said to their strategic consultant, we forced the health plans to pay us more. Mainly, we pushed them because we could. Admissions — But that's different than steering. I mean, changing contract negotiations to get more money, that seems like normal course of business. No, it's not normal course of business. The issue under tying — I mean, the issue in the rule of reason is here, did the health plans enter into — were the health plans forced to enter into these contracts that then contained terms that prevented steering? The predicate issue on Question 5 is, did Sutter force? So the jury had to make a determination on Question 5 whether they forced. And they were precluded from seeing this 2006 admission. Sutter's 1990s — The 2006 admission, did it say that we're going to start steering the hospital — steering the insurance plans? That — that has nothing to do with whether or not, Your Honor, that's either relevant or should have been excluded under 403. Rule 401, of course, says — Element 5 was that the jury found that they weren't steering. So I'm just wondering if that — No, that's not what the jury found. We don't know what the jury found — Can we break down Question 5 on the verdict floor? Sure. I mean, they're differently — two different parts from what I see. Did Sutter force the class health plans to agree to contracts? That could be one. And the second one, that had terms that prevented the plans from steering patients to lower-cost non-Sutter hospitals within the planned network. That's exactly right. There's, like, two different parts to that question. It's a little unclear. We're just speculating on exactly what part the jury found had not been met. That's right, Your Honor. And the predicate issue there was forcing the court — the jury had to deal with, did Sutter force? It could have decided, and we think it did decide, that Sutter didn't force, given all the evidence that was excluded on forcing. But I will say, you're right, it's speculation. And this Court held in Frost v. BNSF Railway four years ago that that type of speculation does — cannot, cannot rebut the presumption of harm where there's error. Could you explain what the two parts are in 5? I'm not sure I see that. Judge Bumatane, I just want to say one thing. I can't hear Judge Koh. I think she's trying to ask me questions. Oh, I'm sorry. Now I can hear you. Now I can hear you. Now I can hear you. Oh, OK. I'm sorry. I was going to say that the excluded evidence included the testimony of Blue Shield Anthem Health Net that they fought back on these system-wide contracts, but they were forced to accept them. In fact, Anthem pushed back, and so Sutter terminated its individual hospital contract with Anthem. And Anthem, because of the limited options in the Bay Area and Northern California, had to fold and accept this contracting scheme. And the testimony of Sutter saying that — or Health Net was told by Sutter that they had to accept it. That's what was going to happen. So that evidence would have been relevant to whether there was any forcing of these health plans to accept the contracts that Sutter wanted, correct? That's exactly right. And, Your Honor, the one thing I will just tweak on what you said is what Sutter did in the late 1990s, and the evidence shows, is that it terminated its individual hospitals and then — terminated the individual hospital contracts, excuse me, and then said, you've got to enter into this all-or-nothing contract or you will not get any tying hospitals in your networks at all. And the tying hospitals were the only game in town. These health plans did not have the ability to contract with any other hospitals in those markets. They were monopolies. So it had to have been that this was forcing — and the point that you brought out regarding Anthem I think is particularly important, because the court below, on the summary judgment order, identified that, indeed, in 2002, Anthem folded to Sutter's system-wide might. Anthem was the largest of the health plans. That's critical evidence of market power and forcing that the jury didn't see with respect to Question 5. Now — So, specifically, what do you think this pre-2006 evidence was relevant to? The tying of the hospitals and whether there was an unreasonable course of conduct in terms of the — what? The forcing of the health plans to accept terms that Sutter wanted once it had the system-wide contracting in place? Both of those things. And also, Your Honor, it was relevant to anti-competitive purpose. Why did Sutter do that? Anti-competitive purpose is critical. First of all, under the rule of reason, under the Cartwright Act, you can satisfy your burden, but — Let's talk about that a minute. Let's talk about that a minute. An argument's being made that if you follow the Casey instructions, 3405 and 3411, and reinsert purpose as those model instructions include, that means the jury would have not had to find anti-competitive effect. But when I look — that is the statement in Statement 2, that the effect or purpose of Sutter's conduct was to restrain competition. But when I look at Statement 3 of Casey 3405, it says that the anti-competitive effect of the restraint outweighed any beneficial effect of the restraint on competition. So respond to the issue that if you follow the Casey instructions and include purpose, you do not — the jury would not have to find anti-competitive effect. I don't think that's the case when I look at just the very next statement in that same jury instruction. Similarly, when I look at Casey 3411, unreasonable course of conduct, it all says — look in the preamble. You should consider the results that the restraint was intended to achieve or actually did achieve. Section B, the probable effect of the restraint on the business involved. Section F, the portion of the market affected by the restraint. So if an argument is being made that if you follow the Casey instructions, the jury does not have to find anti-competitive effect, is that true or not based on the language of these instructions? No. Obviously, the — given the California Supreme Court decision in Corwin and its progeny, you can find, based on an anti-competitive purpose, that a prima facie case has been satisfied under the rule of reason. That's for sure. 3411 in the preamble, where now she — now the judge below edited that, says, in balancing the purposes and effects, that's what it says. And she took out purpose from all of that. It then says you can consider these factors. So 3411 is the balancing instruction and says very clearly that you're balancing purposes or effects there. Moreover, the Supreme Court of California reaffirmed in 2020 in the Ixchel Pharma case that, indeed, where the purpose of a contract is anti-competitive, that satisfies the prima facie rule of reason test. I can see that I'm over my limit now. So — Can I ask one quick question? Back to 5, and we'll give you some time, how are you breaking that into two questions? I only see one. It's two parts. It's two clauses. Did Sutter force the health plans into contracts? That's the first clause. And the second clause is, did those contracts prevent steering by effective narrow and tiered networks? What Judge Coe said, which I agree with, is that there's two — there's two issues there that are put together. And the first issue, the predicate issue, is did Sutter force? The jury could have found Sutter didn't force and then never got to the steering issue. We don't know what the jury did with that, and that kind of speculation cannot rebut the presumption of prejudice. So that's the answer to that question. So the — so the argument would be that the jury could have found that they steered a bit, but the hospitals — I mean, or the insurance companies agreed to it and weren't forced. Is that your argument? No. The jury could have found that — the jury could have found, indeed, that there was no forcing there, but — But agreed. But Sutter seems to be saying that, at the end of the day, the contractual clauses didn't prevent steering. Here, we're saying — Right. So under that argument, you were saying the insurance companies agreed to the steering. That's what Sutter's argument is. But our argument is they were forced. And you have to first understand — Is the issue whether you're agreed to or forced, or is the fact of the steering is what's anti-competitive? The first issue is whether you agreed to or forced, and it's definitely the issue that's most important. Because in any type of tying or bundling case, bundles are pro-competitive, and they're throughout the country, right? I buy right and left shoes together. The issue is whether or not the defendant has forced — used market power to force you to buy the bundle together. That's always the issue in a case. So forcing market power is a predicate issue which must be considered on any rule of reason claim, and that's what went to the forcing issue. That makes sense. Could I just make one other point before I sit? The other point you asked about harmless error. I just want to point out that Sutter, knowing that its admissions were on the sidelines, safely on the sidelines of forcing, argued at closing that, indeed, we can't force these health plans to do anything. They're large, system-wide companies, and we're just this hospital system. If this Court held in Crawford v. City of Bakersfield 4 years ago that where arguments are made on summation that can be rebutted by wrongly excluded evidence, that's the definition of prejudice, and reversal is warranted. Thank you. Thank you, Counsel. Good morning, and may it please the Court. Raymond Wright on behalf of the State of California. State antitrust law can differ from federal antitrust law, and when a federal court is tasked with adjudicating state claims, it is error to ignore the particular principles governing the state claims at issue. I'd like to discuss two such errors made by the trial court in this case. First, the trial court's error in refusing to instruct the jury as to the determinative role that anti-competitive purpose can play in a California Cartwright Act rule of reason analysis. And second, the trial court's refusal to define the relevant purchaser for liability as the direct purchaser, health plans. Turning first to the issue of anti-competitive purpose. Can I ask a quick question before you get there? Because the jury didn't get to any of those elements, and you might not have a position, but it seems like all of this would be harmless, right? We don't agree that the error is harmless, Your Honor. In addition to the reasons that are explained by the plaintiffs in their reply brief, even if the evidence as to Sutter's purpose in these restraints had been admitted without a proper instruction as to the role of anti-competitive purpose, the jury would not have known what to do with this evidence in the case. And we view the district court's legal conclusion that purpose was irrelevant under the California of the pre-2006 evidence, which directly spoke to Sutter's intent in implementing the restraints of trade in this context. And to get to the question asked by Judge Koh earlier, I think it's important to recognize that under California's Cartwright Act, a rule of reason analysis operates in stages. In the first stage, the plaintiff has to show that there is a restraint of trade that is an anti-competitive effect. After that prima facie case is established, the defendant, or Sutter in this case, has the ability to provide a pro-competitive justification. And if as part of that pro-competitive justification, the defendant shows evidence of pro-competitive effects, at that point, the jury, in this case the jury, would have to weigh the evidence of pro-competitive effects against the proffered evidence of anti-competitive effects, if any. And as an example of this, I would direct the Court's attention to the Ixchel Pharma v. Biogen case. Roberts. You would agree, though, that under a Cartwright claim, there has to be competitive, anti-competitive effects? No, Your Honor. Oh, really? No, Your Honor. It could just be anti-competitive purpose under a rule of reason? If there is evidence that there is a restraint of trade that is motivated by an anti-competitive purpose... Wasn't that anti-competitive effect? Not necessarily, Your Honor. In some situations, you can have restraints of trade that have not yet achieved their anti-competitive effects on the market. In that case, evidence of anti-competitive purpose can be crucial in establishing liability under the rule of reason. But don't you think under Cipro and Ixchel Pharma, they emphasize the effects of the competition? In the context of Cipro, Your Honor, they looked at both. They looked at both the effect of this — these reverse payment settlement agreements, as well as the motivation or intent of the parties in entering into the settlement agreements of purpose — at purpose. And in the context of Ixchel Pharma, I think the most helpful discussion appears in pages 584 to 586 of that opinion, because in that context, the California Supreme Court summarized four cases in which it found that anti-competitive purpose was sufficient to conclude that restraints were unreasonable. Could you just give me an example of where anti-competitive — restraints of trade that hasn't yet been anti — had anti-competitive effects, but purpose would be relevant? Certainly, Your Honor. I think it might be helpful to think about it in the context of this case. Yeah. Go ahead. If Sutter had started to begin — began implementing these restraints in 2001 and 2002, at that point, the full increase in price that they were going to charge to health plans had not yet been achieved. But the evidence in this case would show that Sutter's purpose was to ultimately increase prices paid by health plans and leverage its market power. That would have been crucial in demonstrating liability during the early period in terms of challenging this conduct. What would the damages be, then, in the situation where there's no anti-competitive effect, but only purpose? In that context — if there was no anti-competitive effect, Your Honor, we would submit that there would not be damages that could be shown. But you could still pursue injunctive relief in that context to enjoin the conduct. I see that I'm coming up on my time. I just want to briefly — Can I ask one last — oh, go ahead. Sure. No, no. Go for it. One thing that hasn't been addressed, really, is the cumulative effect of both the exclusion of the pre-2006 evidence and the omission of purpose from the jury instructions for purposes of prejudice. I know you mentioned earlier, like, oh, it would have been good to have an instruction so the jury would know what to do with any purpose evidence had it been omitted. Do you want to address that cumulative effect point? Certainly, Your Honor. We view these errors as having happened in tandem. The district court concluded that purpose was irrelevant and, in almost the same breath, vast amounts of evidence directly going to the intent of these restraints in question. We believe that these errors, when considered together, show that the evidence which was excluded could have been admitted as directly relevant to the rule of reason claim and would have also shown that the purpose was to increase prices paid by health plans and to force and leverage market power in order to gain better pricing, in the words of Sutter. And so, yes, we agree. These are cumulative errors that have to be considered in total. Thank you, counsel. Thank you. Good morning. Craig Stewart, representing Sutter. May it please the Court. We're here, as the appellants have, I'm going to focus most of my comments subject to the district court, a ruling that, of course, is governed by an abusive discretion standard. This Court has made clear that district courts have a wide latitude. Yeah, but an abusive discretion standard is not a rubber stamp. You would agree with that, right? No. And that's why we're here today, to explain the reasons why what the Court did was not an abusive discretion. But I think it's important, from the very outset, that this judge lived with this case for 10 years. It was a long, complicated antitrust case with a lot of shifting theories in it and claims. And the judge presided over the whole thing. And as the Supreme Court recognized, the U.S. Supreme Court recognized in a case we cite in our brief, the reason why we give district courts the latitude and give them considerable deference is because they're in the best position to evaluate these issues. And so I think we have to look at the question through that lens first, and we have to look at the question through the lens of, what is the evidence that the judge excluded? And what were the issues in the cases framed by the verdict form? And the issues in the case here, the jury... Can I ask you a question? If I look at one of the exclusion orders, it's ER 93. The district court says that the main issue in the case is whether the system-wide contracts during the relevant period are anti-competitive. And if I look at Corwin, it says you have to consider the facts peculiar to the business to which the restraint is applied, its condition before and after the restraint was imposed, the nature of the restraint and its effect, actual or probable, the history of the restraint, the evil believed to exist, the reason for adopting the particular remedy, the purpose or end sought to be obtained are all relevant facts. And so the question I have is, if you have comments from Sutter that they knew that they would be able to increase their revenue by forcing the system-wide contracts, that the health plans objected to the contracts, and at which Sutter then just terminated the individual hospital contracts, giving them no option for service in a very limited market, which is the Bay Area, then I guess I'm unclear on why that should have been excluded. You know, and if the evidence that the anti-competitive terms that were an issue were implemented when the system-wide contracting was implemented. I think you have to go through the documents again, Your Honor, and that is what the district court did. She invited the... That's a great point, and I think it's one worth spending some time on, because I'm looking at some of those documents, ER 1326 to 27, ER 408, ER 1314, 1319 to 20. Those are just some examples, and I... When I look at these documents, they seem directly relevant to the factors that Judge Coe just outlined, so I'm not... I'd really like to hear Sutter Health's defense of how these are not relevant. So I think the starting place is the 23 documents that the court... that the plaintiffs offered in their offer of proof. When the judge issued her first ruling on this, she said, I invite the plaintiffs to make an offer of proof at trial of specific exhibits. And they didn't wait for trial. They didn't wait to where this could all be presented in context. They opted before trial to offer 23 documents. And so that's what the judge was considering. And if you look at those 23 documents, they fall into some different categories. The ones that the plaintiffs like to highlight the most are a couple of memos from 1997, one from 97, one from 98. And those documents, you can scour those documents. There's nothing in them about trying to prevent tiering or steering. And again, the issues is defined by the verdict form or was there tying and did Sutter force the contract terms that prevented steering? And so the judge, as she was required to do, looked at the documents that were offered to her to assess their relevance. You're not answering my question, which is with respect to these specific documents, they appear to me on their face to be relevant, particularly to Sutter's market power and its ability to force health plans to enter into system-wide contracts. That's the mechanism that underlies both the tying claim and the course of conduct claim. So on the mechanism point, Your Honor, what the plaintiffs say is that the system-wide contracts were the mechanism to impose these terms. And the evidence that the plaintiff, a lot of the evidence that the plaintiffs are referring to, including, I think, the documents that Your Honor is referring to, are talking about Sutter using system-wide contracting to impose a non-par rate, for example, which the plaintiffs claim inhibited the formation of narrow and tiered networks. Or having an equal treatment clause that the plaintiffs claim inhibited the formation of tiered networks. Or some of these documents that they're relying on are documents that say that the insurers objected to these contract terms. And so you have to look at each one of those. And the point is that the evidence that they're citing in their brief, that they offered in that offer of proof, don't go to those issues. They don't go to... Let me ask you a question. I'm looking at her Order ER-93. She says, well, evidence about contracts that do not have the alleged anti-competitive terms are marginally relevant. Why aren't they? If the plaintiffs are alleging that system-wide contracting, as Judge Desai says, is the mechanism by which it's forcing these health plans to accept these allegedly anti-competitive terms, why wouldn't evidence that pre-system-wide contracting Sutter was not able to impose these terms be relevant? Well, the... You have to distinguish between system-wide contracting and the terms, which only came later. So when we're talking about... No, no, no, no. Let's look at the timing, right? Let's look at the timing. System-wide contracting was implemented between 2001 and 2003. The equal treatment provision came into effect 2001. The tiered products provision came into effect 2004. The non-par rate provision came in 2005. And the increase in prices that Sutter achieved started after 2002. So I guess the question is, I mean, you know, we're not commenting on the merits of who would ultimately prevail, but the question is, why wouldn't that be relevant evidence that the plaintiffs should have been able to at least present their case? They may ultimately lose. We don't know. But at least, why wouldn't that timing of when system-wide contracting was implemented, when these terms that were disputed at trial were implemented, and the increase in prices, why would that not be relevant? It certainly is relevant that if the plaintiffs had proved that during the relevant period there was an increase in prices, then that's their burden. It doesn't aid their claim at all to know that it was 2002 that a provision was first proposed and implemented in a contract versus 2006. The issue, as the district court repeatedly recognized, is what was the effect during the time period? And I want to get... Right, but she's not letting you look at what was the case before the time period, before system-wide contracting was implemented. It just seems contrary to Corwin. You have to look at the condition before and after the restraint was imposed to understand the implication of the restraint and the effects of the restraint. But if you don't let someone show the before, how can a jury really assess the after? And again, I think this has to be analyzed in terms of what the plaintiffs were offering. And what the plaintiffs were offering was evidence that the insurers objected to these terms in that before period. But there was ample evidence at trial. Insurer witness after insurer witness testified that they objected to it. So that was not a disputed issue in trial. Okay, look at the evidence, though. A Sutter memo discussing negotiations with Anthem and acknowledging a potential gain of $11 million from system-wide negotiation strategy. A Sutter memo estimating that the future benefit of system-wide contracting would be $198 million per year. A declaration of a Sutter chief financial officer, Robert Reed, that system-wide contracting allowed Sutter to achieve vastly better results, meaning better pricing. A 2006 memo from Strategy Advantage citing future Sutter CEO Sarah Crevin, saying, related to the health plans, we force them to pay us more. They do pay us more, and they don't like us. In some cases, they have paid us more than what was in the market. Mainly, we pushed them because we could. How would that not be relevant? I just don't see how precluding a jury from seeing this allows them to actually do their duty. Okay, let me take those one by one, because I think that that's what the district court did, and that's what this court needs to apply the abuse of discretion standard to. The two documents from 1997 and 1998 are talking about having one contract rather than 24 contracts. There's nothing in there in trying to get better results. And by the way, the CEO who testified in the declaration that Sutter did this, moved to system-wide contracting to get better results, he was asked that very question at trial, and he said, we did it to get better results. There's nothing to prevent plaintiffs from introducing that evidence, and they did introduce that evidence. But back to the 1997 and 1998 memos. We have to be clear that system-wide contracting by itself just simply means one contract rather than 24. And plaintiffs have not articulated, and it's not in the verdict form, any claim that system-wide contracting, having one rather than 24, is anticompetitive. And you can't make such a claim because it is not an antitrust claim. It does not exclude any competitor. It does not foreclose any competition. Plaintiffs have never articulated any basis upon which a court could reach that conclusion or that the jury could reach that conclusion, and that's why the jury was not instructed on that point, and that's why the verdict form didn't ask for that. There's nothing in these... These documents talk about Sutter having losing contracts because they had an uncoordinated, disjointed contracting strategy. There's not a word in these documents about Sutter losing money because insurers want to exclude Sutter from their networks. To the contrary, the 1997 memo at ER 179 says... Evidence that Anthem pushed back when Sutter was insisting on system-wide contracts, so Sutter terminated the individual hospital contract that Anthem had. And so then Anthem eventually folded and entered into a system-wide contract. Anthem witnesses... Why is that not relevant about any evidence of Sutter imposing terms, contracts that these health plans otherwise would have chosen not to participate in because they had no choice? As the district court, again, whose ruling is what we're reviewing here, found after reviewing all of this, that particular point was cumulative. There was witness after witness after witness at trial, including Anthem, who stood up there and said, Sutter is using its system to leverage its power against us. And we repeatedly objected. Every single one of them came in and said, we did not want these... Did you hear that Sutter shared that same view? The admissions that I just read to you, why would that... If the health plans were saying that, why would it not have been relevant to a jury to hear that Sutter actually thought the same thing? The evidence that they've admitted about Sutter's intent was simply that Sutter didn't want to have a disjointed, separate contracting strategy where 24 different hospitals were negotiating their own deals with the insurers. Any company is entitled to have a centralized negotiating team to have a coordinated strategy for negotiation. That's not an antitrust violation. And that's the intent that we're talking about here. All of this talk about Sutter's intent, you have to tie it to the intent behind the restraints at issue here. And as defined by the verdict form, the restraints at issue here are tying hospital services together and preventing steering. And there's not a word in that 1997 memo, there's not a word in that 1998 memo, there's not a word in any of the other documents that they're attributing to Sutter where Sutter is talking about that, including in the memo from Mrs. Krebens. Yeah, can you respond to your friend on the other side saying, well, they might be relevant to the forcing, which, you know, in element... Question 5, it does say, did Sutter force the hospitals into, uh... Yeah, the anti-steering, I think, is the question 5. And the question on forcing, Your Honor, is forcing when? Forcing during the damages period. To know what somebody, some Sutter employees thought in a 1997 memo when the damages period and the conduct period begins in 2009, the damages period begins in 2011. Your friend said it was 2007 was the first contract, though, at issue. Okay, sure. The contract, the entry of the contract, sure. So we'll look at it at that time. The judge admitted evidence and, you know, they say it was arbitrary. It wasn't arbitrary. The judge in both of her orders on this pointed to the fact that that is when, going back to 2006, captures the period in which these contracts were entered. And so that's what we're looking at. We're not looking at what power Sutter supposedly had or purportedly thought it had in 1997 or 1998. And we're particularly not looking at it when the documents from that period, again, the 23 documents or any of the other evidence that they're citing now in their brief, they don't go to this question about an intent to prevent tiering or steering or to tie services together. Let's go back to the Anthem issue. They had a contract with one hospital. That's what they wanted. But with system-wide contracting, they had to accept all of the hospitals, even the ones that they didn't want. So I guess I still don't see how that's not how that's not relevant. If you just wanted a contract with one hospital but you're being forced to enter into a contract with a lot of hospitals that you otherwise wouldn't have entered into a contract for, is that not relevant? We cited this evidence in our brief, Your Honor, that it's actually contrary to the record that Anthem wanted to have a contract with only one hospital. It was uncontradicted. Anthem and every other insurer who testified, testified without contradiction, and plaintiffs don't rebut this point on appeal, that they wanted to have a contract with every single Sutter hospital. And the 1997 memo says the same thing. They want to have a contract with every single hospital. In fact, they said they wanted to have every single hospital in-network. That's why we know in 1997 nobody was thinking about, oh, we've got to get better pricing by preventing them from excluding us. To the contrary, everybody wanted Sutter in-network at that point, at least according to that memo. So it's just not true to say that any insurer, Anthem or anybody else, wanted to have only one contract or contracts with only some subset of Sutter hospitals. And that's another reason why this idea of system-wide contracting just falls apart. And why the jury verdict form says it's tying and it's tearing and steering. And when you understand as the district court judge did that that's what the claims are. Tearing and steering and tying. So, can I just make sure I understand your argument on the forcing. So, you would agree that some of the pre-2006 evidence might show forcing of contracts, but you're saying question five is was there forcing in 2000 during the damages period or the pre-damages period. So therefore it's not relevant or? Yeah, let me try to be a little more clear on that, Your Honor. Thank you. It is certainly true, and we're not trying to dispute that question number five asked whether there was forcing and whether there was terms that prevented steering. We think that the jury decided the ground that the terms didn't prevent steering. And we cited this evidence on every, if you look at those terms on their face, they do not prevent steering. And in fact, all of the plaintiff's witnesses including their expert admitted that it's reasonable to have terms that say you can't change the deal in the middle of the contract. The problem with that though, under a harmless error analysis, that's speculating on what the jury did, right? Harmless error, you have to ask would this have made a difference? So there is some element of, yeah. But let me get to Your Honor's point about forcing because I do want to answer that. So forcing is certainly part of that. But what the judge's analysis on this to which she gets deference is that cumulative that there was all kinds of evidence during trial, during the relevant period we're not asking about forcing in earlier years, but during the relevant period was there forcing. But even to Your Honor's question, even if somehow or other forcing during the early 2000s was somehow relevant, the fact that they were the insurers were all objecting, and each one of them said we didn't want this. The only reason we did it is because Sutter insisted on it. That was in spades in this record. There was really no question about it, to be honest. No, it's cumulative. It's cumulative. And the idea that the jury would have reached a different conclusion, let's say the jury did decide this case on the forcing question rather than that the terms didn't prevent steering, and there's no reason to think that they did, and there's all kinds of reasons to think that they relied on didn't prevent steering. But let's say they did rely on forcing. There's really no reason to believe that if only they had known that in addition to objecting in 2008 and in 2012 they also objected in 2001 that the jury would have come out differently. There's no reason to think that. There's none at all. And there's every reason to think to the contrary that this evidence, as the judge found, was cumulative. And you can go through the rest of the evidence that the plaintiffs are talking about. And again, it doesn't work to stand up and say purpose is relevant. By the way, the judge did, you can't find any place in this record where the judge ever said purpose is irrelevant. That was not the ground for her ruling on the sanctions. It was not the ground for her ruling on the jury instructions. Can you explain why she struck purpose then? I mean, court cases do, California cases do say effects and purpose. So why just not leave it in there? There are lots of California cases that say the sine qua non of recovery for an antitrust claim is effect. The antitrust laws were enacted to prevent anti-competitive conduct. Anti-competitive meaning it has anti-competitive effects. Sure, but that comes in in different elements though. Isn't that an element? I don't have it. This is just for the question of balancing. True. And the jury, by the way, never got to that question, which is one reason why this clearly was not consequential at all. And truth to be candid, the court doesn't even need to reach this question because the jury ruled the purpose part only comes in on the course of conduct claim, not tying. And it only comes in on the second and later elements. And the jury never got there. So we know that it just, right? Why did they strike it in the first place? That's what I don't understand. Yes, because as I say, there are lots of California cases, including CIPRO, which talks about anti-competitive effect being necessary. CIPRO talks about, it's only after the plaintiff has demonstrated, we cited this in our brief, only after the plaintiff demonstrates that an anti-competitive effect exists, that then you turn to reevaluating the history and doing the balancing. And that's where purpose comes in. The judge never said otherwise. We've never argued otherwise. Purpose comes in on that. But it doesn't come in on the first step. That you could have anti-competitive purpose without the effect yet taking a hold and that would be a violation of Cartwright Act. And there's no case. There's no case that has ever held that in California. Corwin did not hold that. Corwin's found that there was showing of neither purpose nor effect. So it didn't reach that issue. Did you ask, did Sutter ask that purpose be removed from the model jury instruction? I'm still unclear on how this happened. How did this happen? Normally district judges basically follow model jury instructions and usually were kind of worried about deviating from a model. Especially on state law. So what was the reason? Did you request that it be struck? We requested it be struck for the reasons I've been explaining here this morning. There is no case in California that says purpose alone is enough. And by the way, in Corwin, the court for that language that the plaintiffs rely upon that says purpose or effect, Corwin sided to a federal case for that. Which again, like Corwin, actually didn't decide that issue. So Corwin is an example of looking to federal law. Federal law is just The Casey instructions are the Judicial Council of California. Would you want to defer to state court judges on their interpretation of state law and what the requirements should be for violations of state statutes? Casey are Judicial Council  So as we cited in our brief, the California courts themselves are not bound by Casey. And where Casey departs from the decisional law, courts are not to follow it. And that's what happened here and that's what the district court correctly concluded. And again, the court, if the court is uncomfortable about this at all, as a federal court, it's just clearly not consequential because they never got there. The court could have given But why wasn't anticompetitive effects come in in element two in that jury instruction? That the effect of Senator's conduct was to restrain competition. So it seems that that might be the anticompetitive effect element. And then three is about balancing between effect or purpose and the beneficial effects. I'm sorry, maybe I'm not following the question, Your Honor, but that's exactly what we say the judge did and it was correct. The ruling she gave was you first have to find that there was a restraint, that the effect of a conspiracy, a And then that's element number one. Element number two is that the effect of which was to restrain competition. So isn't that about anticompetitive effect? Right. So she instructed that you had to find anticompetitive effect. So three, why couldn't you balance effect or purpose with beneficial effect? So on three, yes, three triggers KC 3411 which she gave. And if you look at KC 3411, she took the words out of purpose, sure, but she left in you have to look at the intent that it was intended to achieve. You have to look at the stated reason for it and whether it serves the stated reason. And you look at the history and you look at all the other things the plaintiff's counsel this morning said you have to look at. She told the jury all of that. The jury knew all of that. But again, the point is the jury never had to reach any of that because the plaintiff's lost on the threshold point. Let's talk about KC 3411. C is the history of the restraint. It doesn't seem like the judge, the magistrate judge, allowed evidence of the history of the restraint. She allowed, well, again we go back to the documents. She said, I'm not going to have you look at when it was imposed, what Sutter thought about it when it was imposed, what the effect was on price at the time it was imposed, what was the effect on whether the disputed terms were starting to be inserted in contracts at that time? That was all excluded. No, Your Honor. How was a jury supposed to consider the history of the restraint when there was this just bright line that it has to be 2007 or later? The documents that fell within her order, and again we go back to the offer of proof, were not the history of this restraint. The history of this restraint was preventing, I mean, the restraint was preventing tying and preventing steering. And the 1997 memo, the 1998 memo, that is not the history of that restraint because those documents don't discuss that restraint. That's the point. She did not preclude evidence of the history of the restraint. She precluded evidence of the history of something else that is not a restraint. Unless there's any other questions, do you want to wrap up? Your two minutes over. Yes, thank you, Your Honor. Just to emphasize again, this case was tried at length in the district court before a judge who lived with it day to day. And we can argue here all we want about how we might come out on it. But the question is, did the judge abuse her discretion in how she did this? And under that proper standard, there was no abuse of discretion. Thank you, Counsel. Mr. Cantor? Thank you, Your Honor. Just on the last point, the abuse of discretion,  I think there was a little review there to see whether or not the appropriate legal standards were applied. So that's the thing here. I want to point out really quickly about the before and after nature about how the court misunderstood what to do with that. At 1 ER 4344, the court said, I don't think you can differentiate Sutter's behavior in 2010 that's during the overcharge period from its behavior pre-2006 to show that the 2010 behavior is anti-competitive. That's just wrong. It's wrong under the law, under the Blanton case, and it's wrong as a matter of economics. On the issue of purpose, while we've had a lot of discussion about purpose here, our point here, among other things, is this clearly was prejudicial error because the fact that the judge erased the issue of purpose from the rule of reason and instruction identifies that she was okay with excluding all this evidence of purpose because she didn't think it was relevant. So it goes to the fact that the evidentiary exclusion here was prejudicial. Third — But she didn't make a — she made a 403 ruling saying it might be relevant, but all the other factors weigh against it. Well, actually, we actually don't necessarily think she made a 403 ruling. She said again and again and again this evidence was irrelevant, and there's one other — I guess another way to put it is, can you point me where she said purpose is irrelevant? She said — well, other than the fact that she excluded it from the rule of reason jury instruction, that's what I would point to there. On the — by the way, the judge also, since you referenced their 403, at 6 S.E.R. 1650-51, she says, I think I made the right call with the 2000 evidence. I am even more confident beyond 403 reasons that it was appropriate. So she's talking about relevance there when she makes that statement. I want to just point out some certain sites. The before and after analysis that Dr. Chifty did, I think, is critical here. That identified that once Sutter moved to system-wide contracts with anti-steering restraints, Sutter's prices went up, stayed over competitive levels, and were higher than those competitive levels for 20 years. Can you address opposing counsel's point about what is the restraint? Sure. So the restraints at issue, and you'll see this, Your Honor, at in our pretrial order statement which the court said controlled the adjudication of claims at trial, that's looking at — I'm going to give you the site for that — 1ER-105 and 1FER-55-75. We identify that the restraint of trades here was a course of conduct that Sutter imposed system-wide contracts that were forced upon the health plans, and by those system-wide contracts it imposed anti-steering restraints. Anti-steering clauses, anti-tiering clauses, and non-par penalty rate clauses that reduced the effectiveness of narrow and tiered networks that the health plans even tried to launch. Had they been able to launch them, the health plans would have been able to incentivize their members many, many more of them to visit low-cost hospitals, and that would have constrained Sutter's prices. Indeed, one of the pieces of evidence that was excluded here was Sutter in 1999 submitted a proposed finding of fact in the merger case concerning all debates in Summit Hospital, and it said there that just a little bit more steering, an additional 1 percent of steering away from these hospitals will constrain Sutter's ability to raise prices by 5 percent. That's what Sutter said. This was critical evidence that was kept from the jury. I wanted to say thirdly that my friend said, well, this case wasn't about system-wide contracting. The very first reason that the court denied summary judgment in this case was that the contracts are system-wide. That comes right out of her summary judgment order, and it applied to the tying and rule of reason cases. If you could start wrapping up your over two minutes. Okay, great. So let me just Okay. I just want to point out also that there's been a discussion here about whether pre-limitations evidence is relevant. I would direct the court to Lyons v. England, which is cited, as well as footnote 15 of Continental Org. And I would just like to point out on the forcing point What about the point of opposing counsel that the hospitals got all their, or health plans got all their evidence in, that they objected to these terms, so this was all cumulative? No, it's definitely not cumulative, because what happened when Sutter moved to system-wide contracting was critical. Anthem is the largest of the health plans. It wasn't that they just said, we object. They said, we're not going to contract with the Sutter system. But after only a few weeks, they folded, as the district court said on summary judgment. These were actions. And when that happened, their prices went up. Steve Melody from Anthem, who we couldn't call here, would have testified to that. David Joyner would have testified about how prices went up substantially once Sutter moved to system-wide contracting. That's evidence of forcing. Thank you, counsel. Very good. Thank you, your honors. I appreciate your time.
judges: BUMATAY, KOH, DESAI